IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALERIE O'CONNELL & ALBERT KLESCHIK, SR., h/w | : : : | CIVIL ACTION |
| v. | : : | |
| MARSHALLS, INC. & THE TJX COMPANIES, INC. | : : | NO. 17-2438 |

## **MEMORANDUM AND ORDER**

In this action, Plaintiffs Valerie O'Connell and Albert Kleschick, Sr., wife and husband ("Plaintiffs"), seek damages from Marshall's, Inc., and the TJX Companies, Inc. ("Defendants"),[1] for damages allegedly sustained when Ms. O'Connell slipped and fell in a Marshall's store. Presently before the court are Defendants' motions for leave to amend their Answer to add the affirmative defenses of standing and judicial estoppel, and for summary judgment based on the same affirmative defenses. Docs. 17 & 18. For the reasons that follow, the motion for leave to amend the Answer will be granted, and the motion for summary judgment will be denied.

## I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Both of the affirmative defenses that are the subject of Defendants' motions rely on Plaintiffs' Chapter 13 bankruptcy petition. Therefore, I begin by exploring the procedural history of both this lawsuit and the bankruptcy petition. Except where stated, the following facts are not in dispute for purposes of these motions.

---

[1] Defendants aver that the proper defendant is Marmaxx Operating Corporation. See, e.g., Doc. 17 at 1.

On May 16, 2016, Plaintiff O'Connell was injured in a slip-and-fall accident giving rise to the present litigation. Plaintiffs commenced this action in the Philadelphia Court of Common Pleas on May 12, 2017, and Defendants timely removed it to this court on May 30, 2017. Doc. 1. Plaintiff O'Connell states a claim for negligence and Plaintiff Kleschnik states a claim for loss of consortium. Id. at 23 (Complaint). On June 16, 2017, Defendants filed their Answer. Doc. 4.

At some point after this suit was filed, Defendants learned that on November 12, 2015 -- that is, approximately six months prior to the incident giving rise to the present civil action -- Plaintiffs filed for Chapter 13 bankruptcy protection in the Eastern District of Pennsylvania. See Bankr. Pet. 15-18147, Doc. 17-4 (Exh. C); Voluntary Pet. & Summary of Schedules, Doc. 17-7 (Exh. D).[2] At the time of the filing, Plaintiff Kleschnik had a pending claim in a slip and fall case, and disclosed that claim on the Chapter 13 Schedule B-Personal Property ("Schedule B") form, in the category of "Other contingent and unliquidated claims of every nature . . . ." Schedule B, Doc. 17-7 at 9, item 21 (ECF pagination).

On July 20, 2017, Plaintiffs filed an Amended Schedule B form with the bankruptcy court, providing updated information on Plaintiff Kleschick's previously-disclosed personal injury claim, and adding (without any date information) Plaintiff O'Connell's "Age Discrimination action." Doc. 17-6 (Exh. E) ("Amended Schedule B").

---

[2]As will be discussed, the parties dispute when Defendants became aware of the bankruptcy proceeding.

However, in the Amended Schedule B, Plaintiffs did not disclose the existence of their negligence action against Defendants in the instant matter.

On August 18, 2017, Defendants filed the present related motions -- first, a motion for leave to amend the Answer to assert the affirmative defenses of standing and judicial estoppel, and second, a motion for summary judgment based on the same affirmative defenses. Docs. 17 & 18. In the motions, Defendants argue that Plaintiffs did not have standing to bring this action because they did not disclose it to the bankruptcy court or bring it on behalf of the bankruptcy estate, and that the action is barred by the doctrine of judicial estoppel because Plaintiffs' position before the bankruptcy court is inconsistent with their position in this lawsuit, and because Plaintiffs' failure to disclose the present negligence action to the bankruptcy court evidenced an intent to conceal it from potential creditors.

On August 25, 2017, Plaintiffs filed a second Amended Schedule B with the bankruptcy court, for the first time disclosing the present lawsuit. See second Amended Schedule B, Doc. 19 Exh. 2 ("Second Amended Schedule B").

On September 1, 2017, Plaintiff filed a response in opposition to Defendants' motion for leave to amend, arguing that the motion should be denied on the grounds of delay and futility. Doc. 19. On September 13, 2017, Plaintiff filed a response in opposition to Defendants' motion for summary judgment, arguing that they were not required to disclose the present lawsuit to the bankruptcy court because it arose several months after they filed for Chapter 13 bankruptcy protection, and that to the extent they were required to do so, they filed the second Amended Schedule B immediately after

3

Defendants' motions alerted them to the issue. Doc. 21. Defendants thereafter filed reply briefs in support of both motions. Docs. 24 & 25.

## II. DEFENDANTS' MOTION FOR LEAVE TO AMEND

Defendants aver that during discovery in this case, they learned that Plaintiffs had previously filed for Chapter 13 bankruptcy, in a proceeding which entered an automatic stay and remains pending in the bankruptcy court, and without disclosing their claims against Defendants to that court. As a result, Defendants seek to amend their Answer to include the following affirmative defenses:

> TWENTIETH AFFIRMATIVE DEFENSE
>
> Plaintiffs' claims are barred by the doctrine of judicial estoppel, which prevents a party from taking inconsistent positions by prosecuting claims not disclosed in a bankruptcy proceeding. Plaintiffs had an affirmative duty to disclose assets including causes of action to the bankruptcy court, failed to do and thereby represented that they had no such claims. Plaintiffs cannot now take the inconsistent and opposite position that they do have a claim by pursuing this lawsuit.
>
> TWENTY-FIRST AFFIRMATIVE DEFENSE
>
> Plaintiffs' claims are barred because they lack[] standing to pursue the claims. Having filed for bankruptcy protection, all of the Plaintiffs' assets, including these claims, are property of the bankruptcy estate, and having failed to disclose the claims, Plaintiffs lack standing to pursue them.

Doc. 17 ¶ 17.[3]

---

[3]The proposed Amended Answer is attached to Defendants' motion at Doc. 17-5 (Exh. F).

Defendants are unable to amend their Answer without leave or court or consent of Plaintiffs as too much time has passed after service of their Answer. See Fed. R. Civ. P. 15(a)(1) (allowing 21 days to amend pleading not requiring a response). Therefore, their ability to amend their Answer is governed by Rule 15(a)(2), which provides that "a party may amend its pleadings only with the opposing party's consent or the court's leave. The court should freely give leave when justice so requires." Id. R. 15(a)(2). Leave to amend a pleading is generally granted unless equitable considerations "render it otherwise unjust." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility," although courts have consistently recognized that "prejudice to the non-moving party is the touchstone for the denial of an amendment." Id. (quoting Lorenz v. CSZ Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)) (citations omitted)). Plaintiffs here rely on undue delay and futility to defeat the proposed amendments. Doc. 19.

With respect to delay, delay alone is insufficient to warrant denial of leave to amend. Arthur, 434 F.3d at 204 (citing Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984)). Delay becomes "undue" when it places "an unwarranted burden on the court . . . [and] an unfair burden on the opposing party." Id. (quoting Adams, 739 F.2d at 868). "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." Id. (citing Adams, 739 F.2d at 868); see also Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273

5

(3d Cir. 2001) ("[T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner.").

As for futility, "[a] determination as to futility does not require a conclusive determination on the merits of a claim or defense; rather, the futility of an amendment may only serve as the basis for denial of leave to amend when the proposed amendment is frivolous or advances a claim that is legally insufficient on its face." Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F.Supp.2d 761, 764 (D.N.J. 2000) (citing Miller v. Beneficial Mgmt. Corp., 844 F. Supp. 990, 1001 (D.N.J. 1993)). As a result, courts place a heavy burden on opponents who argue that a proposed amendment to a pleading is futile. See id. Assertions that amendment to an answer would be futile are reviewed under the motion to dismiss standard, which requires the court to accept as true the allegations in the defendant's proposed affirmative defenses and construe them in the light most favorable to the defendant. Id. at 765; see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."). In making the futility determination, the court looks only to the pleadings. Pharmaceutical Sales, 106 F. Supp.2d at 764.

Plaintiffs first argue that the motion for leave to amend should be denied on grounds of undue delay. Doc. 19 at 15-16 (ECF pagination). According to Plaintiffs, Defendants knew or should have known about Plaintiffs' Chapter 13 bankruptcy proceeding "well before" they filed their Answer, see id. ¶ 5, citing a June 3, 2016 public records report that lists the bankruptcy proceeding, and which was provided by

6

Defendants in their document production.  See Accurint Report, Bates Nos. TJX0099-100, Doc. 19 at 19-20 (ECF pagination).  As a result, Plaintiffs argue that they are entitled to conduct discovery on the issue of when and how Defendants learned of Plaintiffs' Chapter 13 proceeding, but that such discovery is precluded because the fact discovery deadline in this case has now passed.  Doc. 19 ¶ 23.

I disagree with Plaintiffs' position.  Adding the two affirmative defenses sought by Defendants would not affect the remaining Scheduling Order in this case, nor prejudice Plaintiffs who were obviously aware of their own bankruptcy proceeding.  In addition, there is no evidence of bad faith or dilatory motive on behalf of Defendants.  Plaintiffs have presented no evidence that Defendants knew or should have known about Plaintiffs' bankruptcy proceeding before they filed their Answer, and Plaintiffs certainly did not disclose it to them.  Although the public records report is dated a few days before Defendants filed their original Answer, it is not clear on what date that report came into Defendants' hands, and Defendants were entitled to develop evidentiary support for the affirmative defenses and related summary judgment motion.  In any event the Court would decline to penalize Defendants for being too slow in discovering Plaintiffs' Chapter 13 filing where Plaintiffs had themselves failed to disclose the existence of this lawsuit in filings made to the bankruptcy court. Defendants filed their original Answer on June 16, 2017, and filed the present motion on August 18, 2017, two months and two days later.  See Docs. 4 & 17.  This period of time does not warrant a finding of undue delay.  See Sweet St. Deserts, Inc. v. Chudleigh's Ltd., Civil Action No. 12-3363, 2013 WL 5467962, at *3 (E.D. Pa. Sept. 27, 2013) (Baylson, J.) ("A two and a half month

delay is a relatively short period of time, and not undue delay."). Therefore, the motion for leave will not be denied on the grounds of delay.

Plaintiffs also oppose the motion on grounds of futility. Doc. 19 at 12-15 (ECF pagination). However, if all of the facts asserted by Defendants in their motion are taken as true and viewed in the light most favorable to Defendants -- as they must be -- then Defendants have stated non-frivolous and legally sufficient defenses of lack of standing and judicial estoppel. As previously noted, Plaintiffs filed for Chapter 13 bankruptcy protection prior to the incident giving rise to this lawsuit, but failed to disclose this lawsuit in an Amended Schedule B in which Plaintiffs updated the bankruptcy court on the status of a negligence action which arose prior to the Chapter 13 filing, and disclosed an age discrimination lawsuit which arose after the Chapter 13 filing. Because the court looks only to the pleadings in making its determination regarding a motion to amend, Plaintiffs' explanations for why they failed to disclose this lawsuit in the Amended Schedule B are immaterial, and will be addressed in the context of Defendants' summary judgment motion.

For the foregoing reasons, Defendants' motion for leave to amend their affirmative defenses will be granted.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants also move for summary judgment on the basis of the same affirmative defenses raised in the motion for leave to amend -- standing and judicial estoppel. Docs. 18 & 24. A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

8

as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[4] A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute. . . ." Fed. R. Civ. P. 56(c)(1)(A), (B). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F.Supp.2d 402, 408 (E.D. Pa. 2000). On a motion for summary judgment "we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Mancini v. Northampton County, 836 F.3d 308, 313 (3d Cir. 2016) (quoting Blunt v. Lower Merion Sch. Distr., 767 F.3d 247, 265 (3d Cir. 2014)).

### A. <u>Standing</u>

Standing is "the threshold question in every federal case." Warth v. Seldin, 422 U.S. 490, 498 (1975).

> In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional

---

[4] Anderson predated the 2010 Amendment to Rule 56. However, the change in wording and location within the rule for the summary judgment standard did not alter the standard or caselaw interpretation of the standard. Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

9

> limitations on federal-court jurisdiction and prudential
> limitations on its exercise. In both dimensions it is founded
> in concern about the proper – and properly limited – role of
> the courts in a democratic society.

Id. (citations omitted).

The Third Circuit has not addressed the issue of standing where, as here, a civil action is brought by plaintiffs acting on their own behalf during the pendency of a Chapter 13 bankruptcy proceeding in which they are the debtors. In order to answer the question of standing in this circumstance, it is necessary to investigate principles of bankruptcy law, including whether a civil claim that arises during the pendency of a Chapter 13 bankruptcy proceeding constitutes "property of the estate" for purposes of the bankruptcy proceeding, and, if so, the impact of Federal Rule of Bankruptcy Procedure 6009, which requires the debtor/plaintiff to bring such a civil lawsuit "in behalf of the bankruptcy estate."

The first question is easily answered in the affirmative. Section 541 of the Bankruptcy Code provides that commencement of a bankruptcy proceeding "creates an estate . . . comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); see Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988). These interests include pending lawsuits and potential or likely causes of action. Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors, Corp., 337 F.3d 314, 322 (3d Cir. 2003). Moreover, in the context of a Chapter 13 bankruptcy, section 1306 provides that "[p]roperty of the estate includes . . . all property of the kind specified in [section 541] that the debtor acquires

10

*after the commencement of the case but before the case is closed, dismissed, or converted* to a case under [another] chapter . . . of this title, whichever occurs first. . . ." 11 U.S.C. § 1306(a)(1) (emphasis added); see also In re Stretcher, 466 B.R. 891, 893 (W.D. Tex. 2011) ("[F]or Chapter 13 cases, the definition of 'property of the estate' is expanded" beyond the requirements of section 541, to include all property the debtor acquires "after the commencement of the case but before the case" concludes) (citing section 1306(a)).

In other words, by the plain language of sections 541 and 1306, the property of a Chapter 13 bankruptcy estate includes both existing and potential causes of action at the time the bankruptcy proceeding is commenced (11 U.S.C. § 541), and those which arise after the bankruptcy proceeding has commenced and before it has been "closed, dismissed, or converted." Because Plaintiffs' cause of action against Defendants arose after Plaintiffs filed for Chapter 13 bankruptcy protection, but before that proceeding has terminated, Plaintiffs' cause of action clearly constitutes property of the bankruptcy estate.

Having established that Plaintiffs' lawsuit is part of the bankruptcy estate, Defendants move for summary judgment based on Federal Rule of Bankruptcy Procedure 6009, which provides:

> With or without court approval, the trustee or the debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

11

Fed. R. Bankr. P. 6009. Defendants argue that Plaintiffs lack standing because they did not timely disclose this action to the bankruptcy court and did not bring this action "in behalf of the [bankruptcy] estate." Doc. 18-6 at 7-8 (ECF pagination).

There is little case law interpreting Rule 6009 generally, let alone in the circumstances which arise here. Nevertheless, although Plaintiffs did not bring the present action "in behalf of the estate" or amend the caption to include this language, such steps are not explicitly required by the rule, and case law does not require such formality. Rather, cases relied upon by Defendants strongly support the conclusion that disclosure of a post-bankruptcy petition civil lawsuit will satisfy the requirement of standing, and thus of Rule 6009. See, e.g, Rugiero v. Nationstar Mortg., LLC, 580 Fed. Appx. 376, 379 (6th Cir. 2014) (test of whether debtor is acting on behalf of estate is whether debtor has properly disclosed the cause of action to bankruptcy court, trustee, and creditors); Cowling v. Rolls Royce Corp., Civil Action No. 11-0719, 2012 WL 4762143, at *4-5 (S.D. Ind. Oct. 5, 2012) (dismissing civil lawsuit for lack of standing because plaintiff, whose claims arose after he filed for Chapter 13 protection, did not dispute the fact that he never disclosed the civil lawsuit in his Chapter 13 bankruptcy proceeding, and stating that debtors who disclosed pending lawsuits would have standing to pursue their lawsuits on behalf of the bankruptcy estate); Robertson v. Flowers Baking Co. of Lynchburg, LLC, Civil Action No. 11-0013, 2012 WL 830097, at *4 (W.D. Va. Mar. 6, 2012) (Chapter 13 debtor lost standing regarding undisclosed asset). The unmistakable conclusion of these and many other cases is that a debtor's failure to disclose a pending civil action to the Bankruptcy Court deprives that debtor of standing to

12

bring the civil action -- and, logically, that a debtor will have standing if the civil action is disclosed.

Here, although Plaintiffs failed to disclose this lawsuit to the bankruptcy court for over a year after the cause of action accrued, Plaintiffs did disclose it by filing a second amended Schedule B on August 25, 2017. Therefore, unlike the cases relied upon by Defendants, here Plaintiffs have disclosed the present lawsuit to the Bankruptcy Court, and thus have standing. I will examine the impact of Plaintiffs' failure to make this disclosure in a more timely manner as part of the equities in the judicial estoppel discussion, but for purposes of legal standing, I conclude that Plaintiffs' recent disclosure suffices.

### B. Judicial Estoppel

Defendants also move for summary judgment on the grounds that Plaintiffs' failure to timely disclose this cause of action in their schedules to the bankruptcy court judicially estops them from claiming they have an interest in this case. Judicial estoppel is a judge-made "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996); see also In re Kane, 628 F.3d 631, 639 (3d Cir. 2011) ("[J]udicial estoppel is a fact-specific, equitable doctrine, applied at a court's discretion."). It is "an extreme remedy, to be used only when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 N. 5 (3d Cir. 2008).

13

Before examining the elements of a judicial estoppel defense, it is first necessary to consider the premise of Defendants' argument; as a matter of bankruptcy law, did Plaintiffs owe a duty to disclose their claims in this lawsuit to the bankruptcy court. While closely related to the previous discussion, this question merits closer analysis in light of the focus on the equities involved. As the Third Circuit has stated, "[b]ecause creditors and the bankruptcy court rely heavily on the debtor's disclosure statement . . . , the importance of full and honest disclosure cannot be overstated. Ryan, 81 F.3d at 362. The Bankruptcy Code requires the debtor to file "a schedule of assets and liabilities." 11 U.S.C. § 521(a)(1)(B)(i). As with the definition of property of the bankruptcy estate, such assets include causes of action and potential causes of action. See Ryan, 81 F.3d at 362 ("schedule must disclose . . . 'contingent and unliquidated claims of every nature'") (quoting Official Forms, Schedule B, App. 41). Under the Code, assets that were not disclosed cannot be discharged and remain property of the estate, meaning that a debtor who failed to disclose assets cannot regain ownership of them. See 11 U.S.C. § 554(d); see Parker v. Wendy's Intern., Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) ("Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate.") (citations omitted).

Although the Third Circuit has not held directly on this point, other courts have held that in a Chapter 13 reorganization, the duty to disclose continues after a debtor submits the schedule of assets and liabilities, meaning that the debtor must amend the schedule if the asset picture changes. See, e.g., Ajaka v. Brooksamerica Mort. Corp., 453 F.3d 1339, 1344 (11th Cir. 2006). Plaintiffs cite to cases reaching a different conclusion,

Doc. 21 at 17 (ECF pagination), but those cases are distinguishable. First, in a case involving a Chapter 7 bankruptcy petition, the Honorable Eduardo C. Robreno of this court found no continuing duty of the debtor to disclose a personal injury claim that did not exist at the time of the petition, pointing out the difference between a Chapter 13 reorganization and a Chapter 7 liquidation. Gaito v. A-C Product Liab. Trust, 542 B.R. 155, 165 & n.9 (E.D. Pa. 2015). Similarly, the Honorable D. Brooks Smith (now Chief Judge of our circuit) held, in the context of a Chapter 11 petition, that a personal injury cause of action that accrued five months after the bankruptcy petition was filed, and bore no relationship to it, did not become part of the bankruptcy estate. In re Doemling, 127 B.R. 954, 955-57 (W.D. Pa. 1991). In contrast, as cited above, section 1306 is unequivocal that all property that a debtor acquires after commencement of the proceeding and up until the matter is concluded becomes part of the estate. Therefore, I conclude here that Plaintiffs had a duty to advise the bankruptcy court of their claims in this matter, as they accrued while the bankruptcy proceeding was still pending.

Turning back to judicial estoppel, that doctrine is applicable when three elements are met; (1) the party to be estopped must have taken irreconcilably inconsistent positions, (2) the party to be estopped acted in bad faith, and (3) the remedy is tailored to address the harm. G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009); Krystal Cadillac, 337 F.3d at 320.

With regard to irreconcilably inconsistent positions, "[a]ll that is necessary to meet this first prong is that the party to be estopped asserted an inconsistent position in a previous proceeding and cannot credibly reconcile his or her changed stance." Ortlieb v.

Hudson Bank, 312 F.Supp.2d 705, 711 (E.D. Pa. 2004). Not surprisingly, therefore, most courts find this element to be satisfied where plaintiffs initiate a civil action without disclosing the lawsuit to the bankruptcy court. See, e.g., In re Superior Crewboats, Inc., 374 F.3d 330, 335 (5th Cir. 2004) ("[Debtors] omission of the personal injury claim from their mandatory bankruptcy filings is tantamount to a representation that no such claim exists."); Ortlieb, 312 F.Supp.2d at 712 (plaintiff asserted irreconcilably inconsistent positions in filing for bankruptcy protection and omitting any mention of contingent claims against defendant in three bankruptcy disclosure statements); Tokheim v. Georgia-Pacific Gypsum, L.L.C., 606 F.Supp.2d 988, 996 (N.D. Iowa 2009) (plaintiff's failure to amend bankruptcy schedules to disclose claims that accrued after she filed for Chapter 13 bankruptcy protection "clearly inconsistent" with subsequent civil lawsuit).

Plaintiffs argue that because they did not have a duty to disclose the present claim in their Chapter 13 bankruptcy proceeding, they have not taken irreconcilably inconsistent positions. Doc. 21 at 17 (ECF pagination). I disagree. As just discussed, Plaintiffs were required to disclose this civil action to the bankruptcy court because their claims accrued while their Chapter 13 proceeding was still pending. By bringing this action on their own behalf and failing to promptly disclose it to the bankruptcy court, Plaintiffs in essence represented opposite positions to two courts, telling this court they had a claim for money damages against Defendants and telling the bankruptcy court that they did not. Therefore, the first element of judicial estoppel is met.

The second element requires that the party to be estopped acted in bad faith, which means it "play[ed] fast and loose" with the court. Krystal Cadillac, 337 F.3d at 319 (quoting Scarano v. Central R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953)). In this context, bad faith requires a showing that Plaintiffs deliberately failed to disclose this lawsuit to the bankruptcy court, meaning that they had knowledge of the claim and a motive to conceal it from their creditors. See id. at 321 ("[A] rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose.") (citing Oneida Motor Freight, 848 F.2d at 416-18). However, the Third Circuit has also held that "policy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of non-disclosure in a bankruptcy proceeding." Ryan, 81 F.3d at 364 (declining to treat careless or inadvertent non-disclosures "as equivalent to deliberate manipulation when administering the 'strong medicine' of judicial estoppel") (quoting Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1428 (7th Cir. 1993)). The Court explained that judicial estoppel "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts." Id. at 365.

Plaintiffs attach affidavits in which they state that the failure to disclose the present negligence lawsuit to the bankruptcy court prior to August 25, 2017, was inadvertent and unintentional. See Affidavits of Mr. Kleschick and Ms. O'Connell, Doc.

17

21 Exh. 2.[5]  In the affidavits, Plaintiffs explain that when they filed their amended schedules on July 20, 2017, they did so at the request of the Chapter 13 trustee for the principal reason of accounting for the settlement of Mr. Kleschick's pre-bankruptcy petition personal injury claim.  Kleschick Aff. ¶ 9; O'Connell Aff. ¶ 9.  They also disclosed to the bankruptcy court the settlement of a claim Plaintiff O'Connell had with her employer shortly before they filed for bankruptcy protection.  Kleschick Aff. ¶ 4; O'Connell Aff. ¶ 4.  Plaintiffs further explain that they (and their counsel) did not believe they were required to notify the Bankruptcy Court regarding the present negligence lawsuit because, unlike the two lawsuits they had disclosed, this action arose after they filed for bankruptcy protection.  Kleschick Aff. ¶ 16; O'Connell Aff. ¶ 16.  Lastly, Plaintiffs state that they filed their second Amended Schedule B in the bankruptcy court on August 25, 2017, "[i]mmediately upon learning . . . that we needed to account for the instant claim in our Schedule B."  Kleschick Aff.  ¶ 14; O'Connell Aff. ¶ 14.

Plaintiffs' explanation for why they believed this lawsuit was not required to be disclosed to the bankruptcy court -- it arose after they petitioned for bankruptcy protection, while the others arose beforehand -- is plausible, and there is no additional evidence to suggest that the omission was anything other than a misunderstanding of bankruptcy law.  Therefore, I see insufficient indication that Plaintiffs intended to "play

---

[5]Two pages of Mr. Kleschick's affidavit were inadvertently omitted from the original filing, but were added to the record by a Praecipe to Attach filed on September 14, 2017.  See Docs. 21 & 22.

18

fast and loose" with the courts, and decline to make a finding of bad faith. As a result, I conclude that the second element of judicial estoppel is not met, and that Plaintiffs are therefore not estopped from bringing this action.

Because I have not found bad faith, I do not find it necessary to address the third prong of the judicial estoppel analysis (whether the severe remedy of judicial estoppel is tailored to address the harm). However, I note that Plaintiffs have now placed the bankruptcy court on notice of this civil action, and that presumably the bankruptcy court can now take whatever action it sees fit with regard to any proceeds recovered in this action.

### IV. **CONCLUSION**

Defendants are granted leave to amend their Answer to add the affirmative defenses of standing and judicial estoppel. However, Defendants' motion for summary judgment, which is based on the same affirmative defenses, will be denied. An appropriate order follows.